IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jolie Ann Brown, | ) | C/A No. 0:10-1930-RMG-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Jolie Ann Brown ("Brown"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In May 2007, Brown applied for SSI and DIB. Brown's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 24, 2009 at which Brown appeared and testified and was represented by Donald L. Pilzer, Esquire. After hearing testimony from a medical expert and a vocational expert, the ALJ issued a decision dated December 4, 2009 finding that Brown was not disabled. (Tr. 9-18.)

Brown was born in 1963 and was 43 years old on the alleged disability onset date. (Tr. 218.) She has a high school education and past relevant work experience in food preparation and cleaning

(Tr. 27, 31, 187.)  Brown alleges disability since July 1, 2006 due to severe depression, anxiety, Hepatitis C, chronic bronchitis, asthma, and back problems.  (Tr. 165.)

The ALJ made the following findings and conclusions:

1.  The claimant met the insured status requirements of the Social Security Act through March 31, 2007.

2.  The claimant has not engaged in substantial gainful activity since July 1, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.  The claimant has the following severe impairments:  bronchitis, anxiety, depression, back pain, substance abuse and Hepatitis C (20 CFR 404.1520(c) and 416.920(c)).

                         *   *   *

4.  The claimant's impairments, including the substance use disorders, meet sections 12.04 and 12.06 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

                         *   *   *

5.  If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

6.  If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meet or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

                         *   *   *

7.  If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with certain limitations.  Specifically, I find that the claimant can lift up to 20 pounds occasionally and 10 pounds frequently. She can stand/walk up to 6 hours total in an 8 hour workday, sit up to 6 hours, and has unlimited use of her upper and lower extremities for pushing and pulling, as well as operation of hand and/or foot controls.  The claimant can occasionally climb ramps, stairs, ladders, ropes and scaffolds, bend stoop, kneel, crouch, and crawl.  There are no manipulative, visual, or communicative limitations.  She should avoid concentrated exposure to respiratory irritants such as fumes, dusts, gases, odors and poor ventilation. Claimant can follow short simple instructions and perform simple repetitive tasks with only occasionally public contact and interaction.  Claimant would be able to sustain attention and concentration for 2 hours at a time before

needing a 10-15 minutes break.  She may be absent from work on an unscheduled basis 1 to 2 days per month.

\*   \*   \*

8.   If the claimant stopped the substance use, the claimant would be unable to perform past relevant work (20 CFR 404.1565 and 416.965).

\*   \*   \*

9.   The claimant was born on [REDACTED], 1963, and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

10.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11.  Transferability of job skills is not an issue because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

12.  If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

\*   \*   \*

13.  Because the claimant would not be disabled if she stopped the substance use (20 CFR 404.1520(g) and 416.920(g)), the claimant's substance use disorders is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935).  Thus the claimant has not been under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 11-18.)

On June 18, 2010, the Appeals Council denied Brown's request for review, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-4.)  This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R.

§§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform [her] past relevant work; and

(5)    whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Brown raises the following issues for this judicial review:

A.    Did the Commissioner apply an incorrect legal standard by failing to assess opinion evidence from the Court's own medical advisor, Dr. C. David Tollison?

B.    Does substantial evidence support the Commissioner's decision when the ALJ opinion fails to thoroughly assess the credibility of the claimant's testimony?

(Pl.'s Br., ECF No. 12.)

## DISCUSSION

**A.    Dr. C. David Tollison**

Brown first argues that the ALJ erred in failing to assess the testimony of medical expert Dr. C. David Tollison, a clinical psychologist.  Dr. Tollison testified that, while the fact that Brown tested positive for crack cocaine in 2006 gave him "some reservation," Brown had an affective disorder and an anxiety-related disorder.  A claimant may meet the relevant Listings for these disorders by satisfying both the paragraph A and B criteria.  See 20 C.F.R. Pt. 404, subpt. P, app. 1. In opining whether Brown met Listing 12.04 or 12.06, Dr. Tollison stated that Brown met the paragraph A criteria; however, Dr. Tollison found that Brown only satisfied one of the four paragraph B criteria.[1]  Specifically, Dr. Tollison testified that Brown's mental impairments caused a marked impairment in maintaining concentration, persistence, or pace; a moderate impairment in her activities of daily living, and a moderate impairment in her social functioning.  Dr. Tollison also stated that Brown would have some difficulty with attendance and in learning, remembering, and carrying out detailed instructions.  (Tr. 44-45.)

Brown argues that a remand is warranted because the ALJ failed to discuss and evaluate this testimony pursuant to 20 C.F.R. §§ 404.1527(d); 416.927(d).  Brown further appears to contend that it is unclear whether the limitations discussed by Dr. Tollison incorporate Brown's drug or alcohol usage, in part because Dr. Tollison was not asked to set forth competing assessments of Brown's limitations.  Brown further argues that the ALJ's failure to discuss Dr. Tollison's testimony is not harmless because if his opinion that Brown suffered from marked limitations in maintaining

---

[1] To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least two of the following:  "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."  20 C.F.R. pt. 404, subpt. P, app. 1.

concentration, persistence, or pace is accepted then Brown would be unable to perform the jobs found by the ALJ.

Even assuming that the ALJ's failure to discuss Dr. Tollison's testimony was error, the court finds that any error was harmless. Brown has failed to demonstrate that acceptance of Dr. Tollison's testimony would impact the ALJ's disability determination. As an initial matter, Dr. Tollison testified that Brown's mental impairments would *not* satisfy the requirements of Listing 12.04 or 12.06.[2] Further, the only functional limitations that Dr. Tollison identified were that Brown would have some difficulty with attendance and in learning, remembering, and carrying out detailed instructions. These limitations are consistent with the ALJ's determination of Brown's residual functional capacity ("RFC"), which included limiting Brown to short simple instructions and simple repetitive tasks and that she may have one to two unscheduled absences from work per month. Further, the court rejects Brown's argument that the ALJ's failure to discuss Dr. Tollison's testimony that Brown would have marked limitations in maintaining concentration, persistence, or pace renders the ALJ's RFC assessment unsupported. As pointed out by the Commissioner, Dr. Tollison's statement concerning the degree of limitation of Brown's concentration, persistence, or pace was pursuant to the psychiatric review technique, which is used to determine whether a claimant has a severe mental impairment and whether a claimant meets a Listing. See 20 C.F.R. §§ 404-1520a(c); 416.920a(c). However, the limitations identified in a psychiatric review technique are "not an RFC assessment." SSR 96-8p. Additionally, Brown's RFC included a limitation that she "would be able

---

[2] The court observes that the ALJ found that with Brown's substance abuse she would meet these Listings, as Brown experienced marked difficulties in social functioning and in concentration, persistence, or pace. However, the ALJ found that if Brown stopped the substance abuse, she would not meet these Listings. (Tr. 12-14.)

to sustain attention and concentration for 2 hours at a time before needing a 10-15 minute[] break."
(Tr. 14.)

Upon review of these arguments and the record in this matter, the court finds that remand for
an express discussion of Dr. Tollison's testimony is not warranted.  In short, Brown has failed to
point to anything in Dr. Tollison's testimony which may alter the ALJ's conclusions regarding the
Listings or Brown's RFC in a way that would favor Brown.  Brown therefore cannot demonstrate
that remand might lead to a different result.  See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th
Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the
grounds upon which the agency acted in exercising its powers were those upon which its action can
be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure
used or the substance of the decision reached.") (citations and internal quotation marks omitted);
Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error
applies to Social Security disability cases).

**B.      Brown's Credibility**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit
has stated that "the determination of whether a person is disabled by pain or other symptoms is a
two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  In this matter only the second
step is at issue,[3] during which the ALJ must expressly consider "the intensity and persistence of the
claimant's pain [or other symptoms] and the extent to which it affects her ability to work."  Id.  In
making this determination, the ALJ's decision "must contain specific reasons for the finding on

---

[3] The first step requires there to "be objective medical evidence showing the existence of a
medical impairment(s) which results from anatomical, physiological, or psychological abnormalities
and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76
F.3d at 594 (internal quotation omitted).



credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.  "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added).  "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id.  The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

> (i)    Your daily activities;
> (ii)   The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii)  Precipitating and aggravating factors;
> (iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ found that Brown had alleged "that she cannot work due to depression, anxiety, asthma, back pain and Hepatitis C." (Tr. 15.)  However, in examining Brown's credibility,



the ALJ found that Brown's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Id.) In reaching this conclusion, the ALJ expressly considered several factors in discounting the credibility of Brown's subjective complaints. Specifically, the ALJ found that the record revealed that (1) Brown is "independent in her activities of daily living;" (2) Brown's alcohol and drug use aggravate her symptoms but that she is in remission; and (3) Brown was not always compliant with her prescribed medication. (Tr. 16.) The ALJ also concluded, contrary to Brown's testimony that she last worked in June 2008, that the record showed that Brown was working part-time in October 2008. (Id.) The ALJ further considered the medical evidence. For example, the ALJ found that the records revealed that (1) in November 2006 Brown exhibited a negative straight leg raise; normal range of motion, gait, and motor and sensory exams; (2) in December 2006 Brown was instructed to stop smoking and using cocaine; and (3) in June 2008 Brown reported no current drug usage and that she handled household chores, shopping, cooking, and personal grooming.[4] (Tr. 15.) In September 2008, Brown was involuntarily committed as a danger to herself, others, or property following her report that while intoxicated she was having suicidal thoughts. Brown was admitted with a global assessment of functioning ("GAF") score of

---

[4] The court observes that the examining doctor opined that Brown's mental and physical impairments were "severe enough to limit her ability to gain and maintain employment," especially in light of her boyfriend's recent suicide at her home. (Tr. 358.)

30 and discharged with a GAF score of 70.[5]  The ALJ observed that Brown recognized that "abusing alcohol contributed to the instability of her mood" based on Brown's reported belief that "she would not have felt suicidal if she was not intoxicated on alcohol." (Tr. 16; see also Tr. 392.)  The ALJ also summarized Brown's improvements at discharge.  (Tr. 16; see also Tr. 391-92.)  Further, medical records from November 2008 and May 2009 indicated that Brown was not using drugs or drinking alcohol.  (Tr. 16.)

Upon a thorough review of the record as a whole, the court finds that the ALJ did not err in his analysis in determining the credibility of Brown's subjective complaints.  See Craig, 76 F.3d at 595.  Brown challenges the ALJ's decision to reject her credibility based on medication non-compliance and what Brown describes as an "unsuccessful work attempt" in October 2008.  However, even if these arguments are accepted, the court finds that they do not render the ALJ's decision unsupported.  In determining that Brown's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, the ALJ considered Brown's subjective complaints in conjunction with the medical evidence and the other evidence of record.  Accordingly, Brown has failed to demonstrate that the ALJ erred in finding that Brown's subjective complaints are inconsistent with the record.  See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are

---

[5]  The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning.  According to the DSM-IV, a GAF score between 21 and 30 may reflect that "behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job home or friends)." Id. at 34.  Further, a GAF score between 61 and 70 may reflect "[s]ome mild symptoms" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." Id.  A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33.

inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"). Moreover, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Based on the record as a whole, the court cannot say that the ALJ's determination as to Brown's credibility is not supported by substantial evidence or controlled by an error of law.

## RECOMMENDATION

For the foregoing reasons, the court finds that Brown has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 2, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).